IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



SOUTHERN DISTRICT OF MISSISSIPPI
FILED
MAR - 3 2023
ARTHUR JOHNSTON
BY_____ DEPUTY

| | |
|---|---|
| LESLIE E. FORD | PLAINTIFFS |
| vs. | CAUSE NO. 1:23cv60 TBM-RPM |
| SOCIETY OF THE DEVINE WORD, SOCIETY OF SAINT AUGUSTINE; JOSEPH DANG; and DEBORAH VAUGHN | DEFENDANTS |

**COMPLAINT**
**(JURY TRIAL REQUESTED)**

MAY IT PLEASE THE COURT:

COMES NOW the Plaintiff, Leslie E. Ford, and by and through the undersigned attorney of record respectfully submits this Complaint against Society of the Devine Word, Society Of Saint Augustine; Joseph Dang; And Deborah Vaughn for the following causes of action: (I) Race Discrimination –Violations of Title VII and 42 U.S.C. § 1981; (II) Tortious Interference With Business Prospective/Employment; (III) Abuse Of Process; (IV) Malicious Prosecution; (V) Negligent Infliction of Emotional Distress; and (VI) Intentional Infliction of Emotional Distress

**PARTIES**

1.  Made Plaintiff herein is Leslie Ford. Leslie Ford (hereinafter "Leslie" or "Ford" or "Plaintiff") is an adult resident of Hancock County, Mississippi, within the jurisdiction of the United States District Court for the Southern District of Mississippi. She may be served with legal pleadings, notice and other necessary

process through her attorney of record, the undersigned Edward Gibson, Esq. pursuant to Fed. R. Civ. P. 5.

2.      Made Defendant herein is Society of the Divine Word Society of Saint Augustine. The Defendant Society of the Divine Word Society of Saint Augustine. is a non-profit business entity organized under the laws of and located in the State of Mississippi, specifically, Hancock County Mississippi, a county within the jurisdiction of the United State District Court for the District of Mississippi. The Defendant Society of the Divine Word Society of Saint Augustine may be served with summons via any means proscribed by Fed. R. Civ. P. 4.

3.      Made Defendant herein in Deborah Vaughn, individually and as agent of the Defendant Society of the Divine Word. Defendant Deborah Vaughn resides within the State of Mississippi and she may be serviced by Fed. R. Civ. P. 4 wherever she may be found.

4.      Made Defendant herein in Joseph Dang, individually and as agent of the Defendant Society of the Divine Word. Defendant Joseph Dang resides within the State of Mississippi and she may be serviced by Fed. R. Civ. P. 4 wherever she may be found.

5.      The Plaintiff reserves the right to amend this Complaint in accord with any Case Management Order or other directive of the Court, and to add parties, not known to her or whose legal names are not known to her and could not be ascertained.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this case in accord with 28 U.S.C.A. § 1332, as the complaint invokes questions of federal law.

7. This Court has jurisdiction of the parties as each of the Defendants are located within the geographic confines of the Southern Division of The United States District Court for the Southern District of Mississippi. Each Defendant, therefore, has more than such minimum contacts with the forum that the exercise of jurisdiction over the Defendants would not offend traditional notions of fair play and substantial justice and comport with the due process clause of the Fourth Amendment of the United States of America.

8. Venue is proper in the Southern Division of the United States District Court for the Southern District of Mississippi 28 U.S.C.A. § 1391(b)(1).

## STATEMENT OF THE FACTS

9. The Defendant, Society of Divine Word ("SDW-SSA") is a business entity located in Bay St. Louis, Mississippi. Defendant SDW-SSA maintains several acres of property with improvements in downtown Bay St. Louis, Mississippi. The property and the entity is known locally as "The Seminary"

10. Among its many functions and services provided, the Defendant SDW-SSA provides living quarters for retired Catholic clergy. It also provides living quarters and meeting areas for clients who contract to use the premises for retreats and convention.

11.     Defendant Dang[1] oversaw the operation of the Seminary, including food services.

12.     In the Spring of 2019, the Defendant SDW-SSA hired Leslie Ford as a cook for the Seminary.

13.     When hired, Leslie was offered and accepted a rate of pay at about $9.00 per hour with PTO, but no other additional benefits.

14.     The Defendant SDW-SSA <u>did not</u> provide Leslie with an employee handbook.

15.     Duties of a cook included general kitchens duties, such as preparing meals, cleaning, planning menus, and prep. Cooks worked in one of two kitchens on the Seminary property. The first kitchen (the "resident's kitchen") prepared meals for the retired clergy that lived on the property. The resident's kitchen provided three meals per day, two on Saturday, and one on Sunday. The second kitchen (the "retreat center kitchen") prepared meals as needed for meeting attendees at retreats and/or conventions.

16.     Regarding the work in the resident's kitchen, Leslie was expected to prepare meals for seven (7) days every other week, six evening meals, and lunch on Sundays. Every second week, employee, Defendant Deborah Vaughn[2], cooked the seven (7) meals.

---

[1] Wherever in this Complaint, there shall be a factual allegation or legal claim made against "Defendant Joseph Dang" or "Defendant Dang", said allegation is against Defendant Dang, individually and as the agent and employee of Defendant SDW-SSA.

[2] Wherever in this Complaint, there shall be a factual allegation or legal claim made against "Defendant Deborah Vaughn" or "Defendant Vaughn", said allegation is against Defendant Vaughn, individually and as the agent and employee of Defendant SDW-SSA.

17. In addition, Leslie was expected to cover shifts when others were unable. She often cooked breakfasts and lunch for others. Moreover, Leslie was expected to work at the retreat center kitchen, when attendees were on the property.

18. At the time of her hire, there were about five cooks: Defendant Deborah Vaughn, Tara LaFontaine, LaWanda Byrd, Charlie Washington, and Leslie.

19. The function of the resident's kitchen was manned almost exclusively Deborah Vaughn, Tara LaFontaine and Leslie.

20. Tara and Defendant Vaughn are white or Caucasian.

21. Leslie is black or African-American.

22. Immediately upon her hire, Defendant Vaughn began to disparage, harass, insult, and discourage Leslie in her job. Defendant Vaughn's confrontational behavior was rooted in a racial animus against Leslie who is an African American.

23. Leslie worked at her job to the best of her ability, despite the harassment that she received from Defendant Vaughn.

24. At Christmas of 2021, Defendant Vaughn placed a package of coal under the tree for Leslie.

25. In January of 2022, Defendant Deborah Vaughn made a diorama in the resident's kitchen. The diorama made of white Barbie doll choking a black Barbie doll.

26. Leslie reported the racial animus and threatening nature of the diorama brought her to the kitchen to Marilyn, who worked as an administrator for

Defendant SDW-SSA.. In turn, Marilyn reported the incident to Defendant SDW-SSA's agent, Defendant Dang.

27. On January 12, Defendant Dang wrote Leslie requesting her attendance at a meeting on January 14, 2022.

28. Leslie attended the meeting on Friday, January 14, 2022.

29. Defendant Dang, Father Somers, Father Bracken, Brother David, Deborah Vaughn, Tara LaFontaine also attended the meeting.

30. Defendant Dang led the meeting. The sole purpose of the meeting was to address Deborah Vaughn's racist diorama.

31. During the meeting, Father Bracken produced an employee handbook for the employees of the Seminary. He quoted from the handbook regarding the Defendant SDW-SSA's policy against belligerency and racism between employees.

32. Before the meeting could conclude, Father Somers asked Deborah Vaughn and Tara LaFontaine as to why the baby dolls were in the kitchen.

33. After this, Deborah Vaughn stood and announced words to the effect that she had placed the dolls in the kitchen, and that she did not have to answer the questions of her employers. Then, she left the meeting.

34. The meeting continued.

35. Father Somers stated that Defendant SDW-SSA would tolerate racist animus and conduct between employees.

36. Following the meeting, Defendant SDW-SSA through Defendant Dang issued a memorandum to Leslie stating:

> BE ADVISED THAT ANY BREACH OF STANDARDS WILL BE PUNISHABLE BY TERMINATION. The standards at present we are most concerned about are:
>
> Discourteous treatment including harassing coercing, threatening, or intimidating[sic] act or conduct discriminatory in nature toward another's racist; creed, color, national origin, etc.
> Attacking immediately if questioned or corrected,
> Insubordination
> Not Complying with there and other standards are punishable by dismissal.
> We expect you to review pages 8,9, and 10 in your Employee Handbook and adhere to these standards.

37. Defendant Dang told Leslie that it was her conduct that concerned the Seminary and Defendant SDW-SSA and not Defendant Vaughn's Further, the letter stated that it was Leslie's behavior that the Seminary expected to see changed.

38. Defendant Dang abandoned his duties to foster and ensure a work environment free from racial animus, thereby ratifying and fostering Defendant Vaughn's campaign of harassment.

39. With Defendant Dang's tacit consent, Defendant Vaughn continued her campaign of the constant harassment and racial animus towards Leslie.

40. Deborah Vaughn's racial animus escalated until March of 2022, when she swore to a false affidavit accusing Leslie Ford of threatening her life at the workplace. a

41. Thereafter, Leslie was arrested on the false charges levied against her by Deborah Vaughn.

42. As a result of the arrest following false charges by Deborah Vaughn, Leslie spent the night in the Hancock County Jail.

43. Following her release from jail, Leslie gave notice to the Defendant SDW-SSA and Defendant Dang of Defendant Vaughn's continued harassment, including the fact that Deborah Vaughn had sworn a false charge against her, resulting in her arrest.

44. The Defendant SDW-SSA and Defendant Dang took no action even though the allegations of assault and threat levied against Leslie by Defendant Vaughn allegedly took place on Seminary Property during work hours.

45. Because of this conduct, Leslie was required to appear at several court appearances.

46. Never did Deborah Vaughn show up to pursue the charges against Leslie.

47. Never did Defendant SDW-SSA or Defendant Dang make any court appearance as either witness in support of or in defense of the prosecution.

48. Eventually, the City of Bay St. Louis dismissed the charges against Leslie.

49. Leslie continued to work under the harassing conditions created by Deborah Vaughn.

50. Then, on or about May 25, 2022, Father Dang presented Leslie with a job description for "2nd Cook."

51. Among the other job duties, the job description states that the 2nd Cook is to follow the instructions of the 1st Cook." This meant that Leslie—while performing

the same job duties in separate shifts as and Defendant Vaughn—would be her subordinate and be further prey for Defendant Vaughn's racial animus.

52. Leslie refused to sign the document without reading it. Defendant Dang insisted that she sign it then and now.

53. Leslie considered herself to be constructively discharged, and left her duties at the end of that shift.

54. On May 27th, the Defendant SDW-SSA-SSA sent termination letter.

55. Since her constructive discharge and termination, Leslie has been. Unable to find employment. On no less than two occasions, prospective employers have declined to hire her, based in whole or in part upon the record of her criminal arrest.

## CAUSES OF ACTION

### Count I: Race Discrimination –Violations Of Title Vii And 42 U.S.C. § 1981

56. Paragraphs 1 through 55 above as if fully incorporated herein. The factual allegations contained in the above section entitled "STATEMENT OF FACTS" are incorporated herein by reference.

57. The events described above and herein took place in Hancock County, Mississippi, and (unless otherwise specified) on the grounds of the Seminary.

58. The events complained of herein above and herein began with her of her employment in 2019, culminating in the outrageous and tortious conduct beginning at Christmas of 2021 and continuing until her constructive discharge/termination letter.

59. Defendant SDW-SSA, Defendant Dang, and Defendant Vaughn discriminated against Plaintiff because of her race based on the facts identified above which constitutes a violation of both Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

60. Leslie had a contract of employment with Defendant SDW-SSA. It was a contract implied at law.

61. Lesie provided service for Defendnat SDW-SSA in consideration of wages.

62. Defendant SDW-SSA, Defendant Dang, and Defendant Vaughn, individually and as agent of SDW-SSA interfered with Leslie's right to contract and with her employment by creating an atmosphere of hostility so repugnant as to constitute constructive discharge. Said conduct includes but is not limited to:

    a. Permitting Defendant Vaughn to construct and display a racist diaroma;
    b. Calling all employees to a meeting and treating their involvment in the event as petty, whether they were the victim or the perpetrator;
    c. Permitting Defendant Vaughn to dismiss the meeting without consequence;
    d. Allowing Defendant Vaughn to stage her false allegation of assault and threat of force on the Seminary grounds;
    e. Failing to mitigate Defendant Vaughn's abuse of process by allowing Leslie to be prosecuted and jailed;
    f. Constructively discharging Leslie to resolve the conflict created by its employee in the course and scope of her employment and to silence or to impeach Leslie's criticism of Defendnat SDW-SSA's conduct.

63. But for Defendant SDW-SSA, Defendant Dang, and Defendant Vaughn's conduct, Leslie would not have suffered has suffered lost wages, benefits, other contractual damages, other pecuniary losses, as well as all

64. But for Defendant SDW-SSA, Defendant Dang, and Defendant Vaughn's conduct Leslie would not have suffered deep humiliation, anxiety and emotional distress for which she may recover damages at law.

65. But for Defendant SDW-SSA, Defendant Dang, and Defendant Vaughn's could have legally foreseen their conduct resulting in the injruies to Leslie as are described herein.

66. Indeed, Defendant SDW-SSA, Defendant Dang, and Defendant Vaughn intended their conduct to in the injruies to Leslie as are described herein, and therefore Leslie is entitled to puntive damages.

**Count II: Tortious Interference With Business Prospective/Employment**

67. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 66 above as if fully incorporated herein. The factual allegations contained in the above section entitled "STATEMENT OF FACTS" are incorporated herein by reference.

68. Defendant SDW-SSA, Defendant Dang, and Defendant Vaughn intentionally, willfully and with malice interfered with Leslie's business prospective and employment opportunities at the Seminary.

69. Defendant SDW-SSA, Defendant Dang, and Defendant Vaughn did so by creating, fostering, and allowing a hostile work environment that included permitting

Defendant Vaughn to constantly harass, to threaten to belittle, and to exercise her racial animus. This included Defendant SDW-SSA and Defendant Dang permitting Defendant Vaughn to create a racist diaroma mocking hundreds of years of racial injustice, to permit Defendant Vaughn to express an overt racism and animosity against a fellow employee in its employee, allowing Defendant Vaughn to berate and belittle Leslie without consequence and with the tacit approval of the Seminary.

70. The Seminary and Defendant SDW-SSA and Defendant Dang permitted and fostered the abuse of the legal process by Defendant Vaughn against Leslie. The Seminary and Defendant SDW-SSA and Defendant Dang then attempted to place or did place Leslie subordinate to Defendant Vaughn with knowledge of the animosity and hostility that Defendant SDW-SSA and Defendant Dang had permitted to grow and had fostered.

71. The acts of the Defendant SDW-SSA, Defendant Dang, and Defendant Vaughn described herein and as may be proven at the trial of this matter were calculated and intended to interfere with Leslie's right to contract for employment; with her right to engage in commerce and directly in her employment with Defendant SDW-SSA.

72. Said conduct of Defendant SDW-SSA, Defendant Dang, and Defendant Vaughn were done with the unlawful purpose and intent to cause harm to Leslie in her employment and in her person. Furthermore, said acts described herein were done without justifiable cause, contrary to the laws of our country, and constitute malice at law by Defendant SDW-SSA, Defendant Dang, and Defendant Vaughn.

73.     Leslie has suffered injuries as may be proven at trial. Such injuries include but are not necessarily limited to lost income, lost future income, lost wage-earning capacity, emotional distress (including but not limited to humiliation, anxiety, sleeplessness), punitive damages, attorney's fees, and all other special and general damages, injury to reputation.

**Count III: Abuse Of Process**

74.     Paragraphs 1 through 73 above are fully incorporated herein. The factual allegations contained in the above section entitled "STATEMENT OF FACTS" are re-alleged here int their entirety.

75.     The events described above and herein took place in Hancock County, Mississippi.

76.     The events complained of herein above and herein became known to Leslie in March of 2022 at the time of her unlawful arrest.

77.     In February of 2022, Defendant Vaughn did abuse process by swearing to a knowingly false affidavit charging Leslie with assault and threat of violence. Knowingly swearing to such false affidavit was an illegal and unwarranted use of process.

78.     Defendant Vaughn swore to said affidavit with the ulterior motive of causing injury to Leslie.

79.     At all times, Defendant Vaughn was acting as an agent and employee of the Defendant SDW-SSA.

80. Defendant SDW-SSA and Defendant Dang ratified Defendant Vaughn's conduct by failing to report or otherwise make known Defendant Vaughn's conduct. Indeed, as Defendant Vaughn's conduct is criminal in nature. Defendant SDW-SSA and Defendant Dang aided and abetted Defendant Vaughn after the fact.

81. But for the abuse of process committed by the Defendant Vaughn and ratified by the Defendant SDW-SSA and Defendant Dang, Leslie would not have suffered injuries including but not limited to emotional distress, humility, anxiety, imprisonment, and all other general and special damages available at law. As the conduct complained of was intentional, Leslie is also entitled to punitive damages.

82. The injuries that Leslie suffered as a result of the acts of the Defendant were legally foreseeable.

**Count IV: Malicious Prosecution**

83. Paragraphs 1 through 82 above are fully incorporated herein. The factual allegations contained in the above section entitled "STATEMENT OF FACTS" are re-alleged here int their entirety.

84. The events complained of herein accrued in the summer of 2022 at the exoneration of charges against Leslie by dismissal.

85. The events complained of herein occurred in Hancock County, Mississippi.

86. Proceedings initiated against Leslie were conducted in the Bay St. Louis Municipal Court.

87. In about February of 2022, Defendant Vaughn swore out a charging affidavit against Leslie for simple assault by threat of force. Therein, Defendant Vaughn

alleged that Leslie had threatened her life on the grounds of The Seminary and while both Defendant Vaughn and Leslie were acting in the course and scope of their employment.

88. Leslie became aware of this because the City of Bay St. Louis Police Department executed a warrant for her arrest in March of 2022 by coming to her home and arresting her.

89. Leslie was incarcerated and held in jail until she could make bail.

90. Leslie notified the Defendant SDW-SSA of the malicious prosecution. Despite having knowledge of Defendant Vaughn's duplicitous and vituperative conduct, Defendant SDW-SSA and Defendant Dang took no action and thereby ratified Defendant Vaughn's conduct.

91. Because of the charges against Leslie, Leslie was forced to defend her actions in Court. She appeared at her arraignment, pleading not guilty. She thereafter appeared at multiple trial dates.

92. Upon information and belief, the City continued the trial dates because Defendant Vaughn had not cooperated with the investigation and was not appearing as a witness for the prosecution.

93. Ultimately, the City of Bay St. Louis dismissed the charges against Leslie.

94. By swearing out an affidavit, alleging a crime of simple assault by Leslie against Defendant Vaughn, Defendant Vaugh instituted criminal proceedings against Leslie. Defendant SDW-SSA and Defendant Dang ratified this conduct.

95. Such proceedings were terminated in the summer of 2022 in the favor of the Leslie.

96. For reasons of racial animus, Defendant Vaughn instituted the proceeding with malice. Defendant SDW-SSA and Defendant Dang ratified this conduct.

97. Defendant Vaughn had no probable cause to pursue such proceedings. Defendant had probable cause to believe Defendant Vaughn's story. Indeed, Defendant SDW-SSA knew the allegations were false because Defendant Vaughn

98. Leslie has suffered injury in this case to be proven at trial which include but are not limited to mental anguish, anxiety, sleeplessness, stress and other emotional injury. She has also suffered pecuniary losses in lost wages, lost future wages and lost earning capacity, and other associated administrative costs associated with her appearance and defense of the malicious prosecution. She further suffered loss of her right to freedom and be free and safe in her person. She is further entitled to all other special and general tort damages available to her at law, as well an award of punitive damages.

**Count V: Intentional Infliction of Emotional Distress**

99. Paragraphs 1 through 98 above are fully incorporated herein. The factual allegations contained in the above section entitled "STATEMENT OF FACTS" are re-alleged here int their entirety.

100. The events complained of herein accrued in the summer of 2022 at the exoneration of charges against Leslie by dismissal.

101. The events complained of herein occurred in Hancock County, Mississippi.

102. The acts and omissions of Defendant Vaughn and Defendant Dang described in this Complaint were directed at the Plaintiff Leslie.

103. The acts and omissions of Defendant Vaughn and Defendant Dang described in this Complaint were intended to cause hard to Leslie.

104. The acts and omissions of Defendant Vaughn was predicated upon a racial animus and other hostilities unknown to Leslie at this Time.

105. The acts and omissions of Defendant Vaughn and Defendant Dang were ratified by the Defendant SDW-SSA

106. The conduct of Defendant Dang was predicated upon a willful disregard for the rights and safety of Leslie while in the employ of Defendant SDW-SSA, or in the alternative, an effort to conceal the illegal and tortious conduct of Defendant Vaughn or finally for hostilities unknown to Leslie at this time.

107. Twenty-first century Mississippi should be and or is revolted by racial animus and its tolerance should or do create

108. As a result of the intentional infliction of harm, Leslie has suffered emotional distress, including but not limited to, sleeplessness, anxiety, depression, anger, fear, and other forms of emotional distress.

109. As a result of the intentional infliction of harm, Leslie has suffered injury, , including but not limited to lost employment, lost wages, lost earning capacity, injury to reputation.

110. But for the infliction of emotional distress imposed by Defendant Vaughn, Defendant Dang, and Defendant SDW-SSA, Leslie would not have suffered such injury.

111. Defendant Vaughn, Defendant Dang, and Defendant SDW-SSA could have or should have legally foreseen their conduct causing such injury.

112. Indeed, the conducted of Defendant Vaughn, Defendant Dang, and Defendant SDW-SSA was intended to cause such injury.

### Count VI: Negligent Infliction of Emotional Distress

113. Paragraphs 1 through 111 above are fully incorporated herein. The factual allegations contained in the above section entitled "STATEMENT OF FACTS" are re-alleged here int their entirety.

114. The events complained of herein accrued in the summer 2022 at the exoneration of charges against Leslie by dismissal.

115. The events complained of herein occurred in Hancock County, Mississippi.

116. The acts and omissions of Defendant Vaughn and Defendant Dang described in this Complaint were directed at the Plaintiff Leslie.

117. The Defendants Vaughn and Defendant Dang owed a duty to treat the Defendant in a manner and fashion that is not revolting the civil society.

118. The Defendants Vaughn breached this duty by treating Leslie with derision and wanton contempt.

119. The Defendant Dang breached this duty by failing to act as a reasonable employer/supervisor.

120. As a result of the infliction of harm, Leslie has suffered emotional distress, including but not limited to, sleeplessness, anxiety, depression, anger, fear, and other forms of emotional distress.

121. As a result of the infliction of harm, Leslie has suffered injury, , including but not limited to lost employment, lost wages, lost earning capacity, injury to reputation.

122. But for the infliction of emotional distress imposed by Defendant Vaughn, Defendant Dang, and Defendant SDW-SSA, Leslie would not have suffered such injury.

123. Defendant Vaughn, Defendant Dang, and Defendant SDW-SSA could have or should have legally foreseen their conduct causing such injury.

## REQUEST FOR JURY TRIAL

124. The Plaintiff is entitled to and demands a trial by jury for all issues so triable.

WHEREFORE PREMISES CONSIDERED, the Plaintiff Zemi Group prays that a judgment be entered in its favor for:

    A.    Lost wages to be proven at an amount at trial, including all future lost wages, accruing subsequent to the filing of this Complaint;

    B.    Lost Earning capacity and lost future earning capacity;

    C.    Reinstatement or front pay in lieu of reinstatement;

    D.    Lost benefits and other pecuniary losses;

    E.    Compensatory damages;

    F.    A tax gross-up and all make whole relief;

G. All costs, disbursements, pre-judgment interest, post-judgment interest, expert witness fees, and reasonable attorney's fees allowed pursuant to 42 U.S.C. § 1981;

H. All special damages available in tort and at law.

I. All general damages available in tort and at law

J. All contractual damages available at law.

K. All pre-judgment and post judgment interest available at law.

L. Punitive Damages; and

M. Such further relief as is deemed just and proper by the Court.

Respectfully submitted, this the 3rd day of MARCH, 2023.

LESLIE E. FORD, PLAINTIFF

EDWARD GIBSON, ESQ.
MSB No. 100640
Gibson Law, P.A.
544 Main Street
Bay St. Louis, MS  39520
Ph: (228)467-4225;
Fax: (228)467-4212
edward@gibsonlawpa.com